**STUDIENGESELLSCHAFT KOHLE mbH, Plaintiff,**

v.

**NOVAMONT CORPORATION, Defendant,**

v.

**MAX–PLANCK–INSTITUT FUR KOHLENFORSCHUNG**

**and**

**Maria Ziegler, Additional Defendants on Counterclaim.**

**No. 77 Civ. 4722 (RWS).**

United States District Court, S. D. New York.

Feb. 26, 1980.

**472**

Sprung, Felfe, Horn, Lynch & Kramer, New York City, for plaintiff and counterclaim defendants; Arnold Sprung, Nathaniel D. Kramer, New York City, of counsel.

Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendant; Harry C. Marcus, New York City, of counsel.

1. The Max-Planck-Institut Fur Kohlenforschung and Maria Ziegler are additional defendants on the counterclaim.

2. The most favored licensee clause (Article IX), reads as follows:
   1) Should Licensor, during the life of this Agreement, grant to any company producing Polymers in the United States a license under United States Patent 3,113,115 which license contains royalty provisions that, when considered in their entirety, are more favorable than those specified in Article III hereof, then and in that event Licensor shall promptly furnish Licensee with the full text of the royalty provisions of such License.

## OPINION

SWEET, District Judge.

This is an action by Studiengesellschaft Kohle mbH ("SGK") against Novamont Corporation ("Novamont") to recover royalties under a patent license agreement. Novamont has counterclaimed, alleging that SGK fraudulently failed to comply with the most favored licensee clause in its license agreement.[1] Novamont now moves to amend its counterclaim to allege an additional fraud which prevented Novamont from gaining full advantage from its most favored licensee clause. The motion is granted.

The background of this action is set forth in an opinion of this court dated October 19, 1978. SGK is the owner of a patent for production of polypropylene, which it obtained from Professor Karl Ziegler ("Ziegler"). Novamont entered into a patent license agreement with Ziegler in 1967 containing a "most favored nation" clause,[2] which entitled Novamont to substitute for its agreement the terms of any license granted by Ziegler to an American company during the life of the agreement which, "considered in their entirety," were more favorable than those accorded to Novamont.

In 1971, the District Court for the Northern District of Texas issued a decision limiting the applicability of Ziegler's patent. Novamont discontinued payments to Ziegler, whereupon Ziegler on March 24, 1977, terminated the 1967 agreement.

2) Licensee shall be entitled, upon written request within ninety (90) days after receipt of the aforesaid full text of such other license from Licensor, to substitute for the entirety of this Agreement all of the provisions of such other License.
3) The substituted license shall be effective and this Agreement suspended as of the date of the request for substitution of terms by the Licensee.
4) If the substituted license ceases to be in force during the time period in which this Agreement shall again be binding upon the parties for the balance of its term.

Following reversal of the lower court's opinion, *Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858 (5th Cir.), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973), SGK and Novamont agreed that the prior notice of termination would be deemed ineffective. They entered into a contract providing for Novamont to pay past royalties due under the 1967 agreement, plus 10 percent, and specifying that in the future Novamont would enjoy the license terms granted to Diamond Shamrock Corporation ("Diamond"), the successor to Phillips.

Novamont's original counterclaim alleged that SGK had breached the most favored licensee clause in Novamont's license by fraudulently concealing certain secret terms of its 1974 agreement with Diamond which were more favorable than those given to Novamont.

Novamont now claims that it has discovered new evidence which indicates that SGK fraudulently failed to disclose the terms of a paid-up license contract negotiated between Ziegler and Hercules Incorporated ("Hercules") in 1972. This non-disclosure allegedly prevented Novamont from learning first, that the terms of the Hercules contract were even more advantageous than those contained in the secret Diamond contract, and second, that Novamont was entitled under its most favored licensee clause to a paid-up license calculated on the same basis as Hercules' agreement. Novamont seeks to amend its counterclaim to include the allegations concerning Hercules.

Hercules and Ziegler first entered into a license agreement on September 24, 1954. This original agreement was modified by a supplemental agreement executed on May 25, 1964. Following a dispute, Hercules discontinued payment of royalties for the manufacture of polypropylene on March 31, 1970. On April 26, 1972, Hercules and Ziegler entered into a letter agreement to settle their disputes under which Hercules contracted to pay Ziegler a total of $1,600,000 covering both its past production of polypropylene from April 1, 1970 to December 31, 1972 and a fully paid-up license to pro-

duce up to 600 million pounds of polypropylene annually through December 3, 1980, the date of expiration of Ziegler's patent.

On May 11, 1972, Novamont wrote to Ziegler, requesting disclosure of the terms of Hercules' agreement. An exchange of correspondence ensued, during which Ziegler first declined to state the terms of Hercules' agreement, then revealed the general terms of the agreement. When Novamont demanded further details, Ziegler wrote to Novamont on August 28, 1972, explaining that the value of Hercules' paid-up license had been calculated by projecting the present value of Hercules' estimated royalty payments over the life of the patent, that is through 1980. Ziegler stated that the royalty rate used to make this calculation was that "which Hercules had to pay under their older license" and

> was substantially less than that provided for in the previous agreement between Novamont and Ziegler. The Hercules agreement was negotiated before Professor Ziegler's patents issued and provided for royalty payments during this period prior to patent issue. As the Hercules royalty rates would not concern a paid-up license offered to Novamont, I see little purpose in providing Novamont with a copy of the Hercules agreement.

In short, Ziegler took the position that since the 1954 Hercules agreement, as amended, preceded the 1967 Novamont agreement, Novamont had no right to the favorable rates contained in that agreement which had been used to calculate the amount of Hercules' paid-up license.

During later negotiations, SGK adopted a similar stance. In a letter dated January 30, 1974, Novamont stated,

> [W]e see no basis for any meaningful negotiations premised on the Hercules license agreement . . . . The Hercules figures are concerned with the basic 1954 agreement and the 1964 amendment, both being earlier than any contract we had with Novamont.

As stated above, on July 1, 1974, Novamont and SGK finally reached agreement on a new license which provided for pay-

ment of royalties on a running percentage basis, rather than a paid-up basis, and incorporated many of the terms of the Diamond-SGK agreement.

Novamont claims that although SGK represented that the Hercules paid-up license involved only a projection of Hercules' future production at advantageous rates stemming from the 1954 agreement as amended in 1964, in fact Hercules obtained new concessions in 1972. In particular, Novamont has discovered evidence which it claims indicates that the lump sum paid by Hercules was not derived from a computer projection over the life of the patent, but rather excluded the last three years of its life so that, in effect, Hercules paid no royalties for use of the patent from 1978 through 1980. Further, the lump sum for use of the patent from 1970, the date of Hercules' royalty suspension, through 1977 is said to reflect an additional discount of 25 percent on projected royalty payments beyond the present value discount. If these new discounts had been known, Novamont contends, it would have had a right under its most favored licensee clause to a paid-up license calculated at the same rates as those accorded to Hercules.

SGK asserts that amendment of the counterclaim should not be permitted since the alleged fraud fails to state a claim. SGK claims first, that Novamont was never entitled to the terms granted to Hercules; second, that the agreement entered into by Novamont in July, 1974 was an accord and satisfaction of its disputes with Ziegler and SGK and precludes further relief at this point; and third, that Hercules' lump-sum agreement and Novamont's running payment license contract are so different in nature that comparison of the terms of these agreements is impossible.

█ In ruling upon a motion to amend under Rule 15(a), Fed.R.Civ.P., it would be improper for this court to determine the merits of Novamont's claim. On the other hand, it would be a futile gesture to grant leave to amend, if the new claim asserted by Novamont could be defeated by a motion to dismiss. *DeLoach v. Woodley*, 405 F.2d

496 (5th Cir. 1968); *Grogg v. General Motors Corp.*, 72 F.R.D. 523, 527 (S.D.N.Y. 1976). Yet, as the Supreme Court stated in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962),

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave [to amend] should, as the rules require, be "freely given."

*See also Holt v. Katy Industries, Inc.*, 71 F.R.D. 424, 426–27 (S.D.N.Y.1976).

The first ground of opposition to the amendment is that Novamont's most favored licensee clause did not entitle it to the favorable terms granted to Hercules. In support of this contention, SGK points out that Hercules entered into its lump sum agreement in 1972, following the district court's ruling in *Ziegler v. Phillips*, and before the reversal of that ruling. The agreement provided that Hercules would remain bound whether or not the Court of Appeals for the Fifth Circuit affirmed that ruling, so long as the validity of Ziegler's patent was upheld. SGK argues that these circumstances demonstrate that Hercules in effect decided to purchase an insurance policy in 1972 against the possibility that the Court of Appeals would reverse the district court. By contrast, according to SGK, Novamont elected to gamble that the *Phillips* decision would be affirmed and in fact waited until July, 1974, over a year after the Fifth Circuit issued its opinion, to reach an accord with SGK. Therefore, it would be inequitable to allow Novamont, a gambler, to gain rights enjoyed by Hercules, a risk-averter, under guise of its most favored licensee clause.

However, Novamont first demanded information concerning the Hercules contract

on May 11, 1972, almost a year prior to the Fifth Circuit's reversal of the lower court in *Phillips*. Repeated inquiries were made by Novamont through August, 1972, and Ziegler consistently refused to reveal the terms of Hercules' agreement, including the fact that payments by Hercules were not contingent on a finding of patent infringement by the Fifth Circuit. In any event, determination of Novamont's entitlement to the terms of Hercules' agreement turns on assessment of the factual contentions of the parties and presents issues for the jury, not the court.

SGK's second basis for opposition—accord and satisfaction—also poses factual issues which cannot be resolved by the court in this procedural posture. SGK argues that prior to entering into the July, 1974 agreement with SGK, Novamont gained an inkling of the low royalty rate enjoyed by Hercules, and nevertheless made a conscious decision to go forward with the agreement. SGK points to a letter dated January 23, 1974, in which Novamont calculated the royalty implicit in Hercules' lump sum license as 0.37%, while its own rate was 1.3%, over three times as large. SGK has also submitted evidence that Novamont obtained a copy of the Hercules agreement shortly before signing its new license agreement with SGK. However, it would appear that Novamont did not discover that the low royalty rate reflected new price concessions to Hercules which should have been available to Novamont under its most favored licensee clause. As noted above, SGK unequivocally rejected any attempt by Novamont to negotiate based on comparison with Hercules' contract, since it claimed that Hercules' rates had been negotiated prior to Novamont's obtaining of a license in 1967.

■ It is well settled that an agreement in settlement of a dispute which is based upon fraud by one party does not operate as an accord and satisfaction. *Roman v. Delta Air Lines, Inc.*, 441 F.Supp. 1160, 1167 (N.D.Ill.1977); *Martin v. Alco-Deree Co.*, 216 F.Supp. 258 (N.D.Ill.1963); 6 *Corbin on Contracts* § 1292 at 178 (1962).

Furthermore, accord and satisfaction is an affirmative defense as to which the asserting party bears the burden of proof, and which ordinarily presents a question of fact as to the intention of the parties. *Geeslin v. Knight Brothers, Inc.*, 554 F.2d 865, 866 (8th Cir. 1977); *Simpson v. Norwesco, Inc.*, 442 F.Supp. 1102 (D.S.Dak.1977), aff'd, 583 F.2d 1007 (8th Cir. 1978). This is not a case such as *National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622, 643 (S.D.N.Y.1978), aff'd, 597 F.2d 314 (2d Cir. 1979), in which documentary evidence conclusively establishes this issue as a matter of law. Due to the factual issues surrounding this defense, it would be inappropriate for this court to deny amendment on this ground.

In support of its third contention that the terms of the contract granted to Novamont cannot be compared with those in the Hercules contract, SGK relies primarily on *Hazeltine Corporation v. Zenith Radio Corporation*, 100 F.2d 10 (7th Cir. 1938), cert. denied, 306 U.S. 656, 59 S.Ct. 646, 83 L.Ed. 1054 (1939). In that case, Hazeltine Corporation was the holder of patents covering certain radio apparatuses, which it licensed to manufacturers of radios, including Zenith. Zenith's license contained a "most favored licensee" clause, providing that Zenith was entitled to a royalty rate as low as that paid by any other licensee. The contract provided that royalties would be calculated as a percentage of selling price. In lieu of percentage royalties, a licensee could elect at the beginning of any given year to pay a lump sum of $150,000. Zenith argued that if any licensee elected to pay a lump sum in lieu of a percentage of sales, and at the end of the year it appeared that the licensee's royalties were lower than the percentage specified in Zenith's license contract, then Zenith would be entitled to this lower percentage rate under its most favored licensee clause. The court rejected this argument, holding that Zenith had no right under its contract to convert the rate actually achieved by a licensee electing a lump sum formula into a percentage rate applicable to Zenith's contract. The court refused to allow Zenith to avoid the risks

inherent in a lump sum payment, yet enjoy its advantages should it turn out that Zenith would have fared better by choosing a lump sum form of payment at the beginning of the year.

The reasoning of *Hazeltine* would bar Novamont from asserting a right to a running royalty contract in which the percentage payments would equal those used to compute the amount of Hercules' paid-up contract. *Hazeltine* would also appear to preclude Novamont from claiming a right under its most favored licensee clause to wait until 1974, then to obtain a lump sum agreement calculated according to the same formula which had been utilized in negotiating the Hercules agreement in 1972. This is particularly so in light of the substantial changes in circumstances which occurred between 1972 and 1974. However, Novamont claims that if in 1972 it had known the same basis on which the Hercules lump sum payment was calculated, it would have been entitled to a lump sum formula license calculated on the same basis at that time. The ruling in *Hazeltine* is not applicable to this cause of action.

It is true that if Novamont gains the relief it seeks—amendment of its license contract to reflect the implicit royalty rate accorded to Hercules—it will in effect gain the benefit of Hercules' lump sum rate retrospectively. Yet, in 1972, Novamont sought to obtain a lump sum license similar to that granted to Hercules, and, but for the claimed fraud, Novamont avers that it would have done so. It would be unfair to deny Novamont the benefit of contractual terms to which it claims to have been entitled in 1972 because the alleged fraud by SGK prevented Novamont from obtaining these terms until 1980.

SGK contends that Novamont's theory of recovery is simply too speculative to state a claim, since it calls for evaluation of the method used to calculate the size of Hercules' lump sum payment, a method on which the parties may not have concurred, then application of this method to Novamont's plant capacity. Novamont's theory is not so far-fetched as to preclude amendment. If Novamont can demonstrate that SGK fraudulently prevented it from discovering the basis on which Hercules' license was calculated, that but for the fraud it would have been entitled to, and would have entered into, a lump sum contract calculated on the same basis, and that as a result of the fraud it has suffered damages, then it will be entitled to recover those damages from SGK. The courts have been able to fashion effective remedies in equally complex cases involving patent licenses. *See Shatterproof Glass Corp. v. Libbey-Owens-Ford Co.*, 482 F.2d 317 (6th Cir. 1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974). Accordingly, it is preferable to permit amendment and to allow any necessary discovery with respect to the new claim, rather than to assess the merits of the claim at this juncture.

Finally, SGK contends that to sanction amendment at this late date would be prejudicial to SGK, particularly since Novamont has known of the Hercules contract since 1972, and since Novamont has acted in bad faith in failing to inform SGK of the departure of many of its officers with knowledge of pertinent facts, so that SGK has been deprived of an opportunity to depose these individuals. While it is true that Novamont has been aware of the terms of Hercules' paid-up contract since 1972, it has only recently discovered that the calculation of Hercules' lump sum payment involved new discounts, to which Novamont was entitled. Since this discovery was essential to its claim of fraud, amendment will not be denied on this basis. The claim of bad faith is equally unfounded; by electing to wait until document discovery had been completed before taking depositions, SGK accepted the risk that officers of Novamont with knowledge would depart. Novamont should not be penalized because of SGK's discovery strategy.

Although this motion to amend takes place at a late date in this action, Novamont's new counterclaim is closely related to its initial claim based on Diamond's contract. Some discovery relating to Hercules has been .conducted, so that additional dis-

covery will be reasonably confined. Since many of the documents concerning the new claim are in the possession of SGK, there is no showing that it will be prejudiced by the amendment.

The complexity of the issues and the desirability of resolving all disputes between the parties in a single action are also factors weighing in favor of granting leave to amend. As the court stated in *Key Pharmaceuticals, Inc. v. Lowey*, 373 F.Supp. 1190, 1193 (S.D.N.Y.1974), a court "should be particularly lenient in allowing amendment of the pleadings" in cases involving patent license agreements due to the public importance of patent rights. In *Key*, the court permitted amendment of the pleadings in a patent license case even though discovery had been completed and the new issues required recommencement of discovery. Similarly, in this case, the short time required for renewed discovery will be compensated by the elimination of an additional litigation which might be necessary if amendment were denied.

Accordingly, Novamont's motion for leave to file its amended counterclaim is granted. SGK shall file a responsive pleading as required by Rule 15(a). The date for the close of discovery is extended to June 1, 1980.