**KAMAKAZI MUSIC CORP., Barry Manilow and Warner Bros. Publications, Inc., Plaintiffs,**

v.

**ROBBINS MUSIC CORPORATION and Vicks Lithograph, Inc., Defendants.**

**No. 80 Civ. 2877 (RWS).**

United States District Court,
S. D. New York.

Jan. 29, 1982.

Bender & Frankel, New York City, for plaintiffs; Sandor Frankel, New York City, of counsel.

Abeles, Clark & Osterberg, New York City, for defendant Robbins Music Corp.; Robert C. Osterberg, New York City, of counsel.

Evans, Severn, Bankert & Peet, Utica, N. Y., for defendant Vicks Lithograph Corp.; Philip A. Rayhill, Utica, N. Y., of counsel.

## OPINION

SWEET, District Judge.

Currently pending in this action by plaintiffs Kamakazi Music Corp. ("Kamakazi"), Barry Manilow ("Manilow"), and Warner Brothers Publications, Inc. ("Warner") against defendants Robbins Music Corp. ("Robbins") and Vicks Lithograph, Inc. ("Vicks") for copyright infringement are several motions, both substantive and procedural. Robbins has moved for a stay of all further proceedings pending the determination of the appeal from a partial judgment entered by this court in favor of Kamakazi and in the alternative for summary judgment dismissing all remaining claims against Robbins. Warner and Manilow have cross-moved for an order requiring production and inspection of documents, permitting amendment of the complaint pursuant to Fed.R.Civ.P. 15, and granting partial summary judgment on the issue of liability. For the reasons set forth below Robbins' motions for a stay and to dismiss Manilow's and Warner's copyright claims will be denied; Robbins' motion to dismiss Manilow's privacy claim and the claim for punitive damages will be granted; plaintiffs' motion to amend the complaint will be granted in part and denied in part; and Warner and Manilow's motion for partial summary judgment and for discovery will be granted in part and denied in part.

This arduous litigation arises out of Robbins' printing and selling of the compositions of Manilow, a well-known songwriter and recording artist, allegedly in violation of copyrights owned by Kamakazi and the interests of Manilow and Warner in those rights. Manilow, the sole shareholder in Kamakazi, transferred certain copyrights to his songs in whole or in part to Kamakazi in exchange for percentage royalty payments based on sales or license fees. Kamakazi was apparently the duly registered owner of the copyrights. By a written license agreement in November, 1976 ("the Agreement") Kamakazi granted to Robbins the exclusive license to publish and sell certain compositions under the terms and conditions set forth in the Agreement. After the expiration of the Agreement Kamakazi did not renew the license to Robbins and instead granted Warner the right to publish the compositions. Plaintiffs sought injunctive relief and damages for violations of the copyrights when Robbins continued publishing the composition after expiration of the Agreement. The complaint also sought relief for Robbins use of Manilow's name and likeness without consent pursuant to Sections 50 and 51 of the Civil Rights Law. Robbins successfully moved to have its rights under the Agreement determined in arbitration according to its terms, and upon the conclusion of the arbitration the court confirmed the arbitrator's award granting statutory damages to Kamakazi against Robbins for printing and selling copies of Manilow's compositions in violation of the terms of the Agreement. Familiarity with those decisions and the vocabulary of the litigation is assumed.

### Robbins' Motion for a Stay Pending the Decision on Appeal

Robbins has moved for a stay of all further proceedings in this case pending the appeal to the Second Circuit of the partial judgment affirming the award of statutory damages entered by this court on the arbitrator's decision. Robbins contends that the subsequent proceedings in this action will be clearly affected by the Court of Appeals decision and that much time and effort could be saved by staying all proceedings pending its decision.

█ The decision to grant a stay requires consideration of the competing interests of the parties and to obtain a stay a party must make a showing of undue prejudice. *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y.1980); *Kaufman v. Jeffords*, 268 F.Supp. 784, 785 (S.D.N.Y.1967). The actions by Warner and Manilow had been stayed upon Robbins' motion pending arbitration of Kamakazi's claim. A judgment having been rendered on that claim, there appears to be no reason to further delay Manilow and Warner in the prosecution of any claims they may have, since obviously the court is of the view that the judgment was appropriately granted. Robbins' assertion of prejudice is based solely upon its expectation of appellate reversal. Much of the difficulty in bringing these issues to a final resolution has resulted from Robbins insistence on arbitration. In fact, it may serve all parties best to have all issues available for appellate review at the same time. The motion for a stay pending the appeal is denied.

### Robbins' Motion to Dismiss Manilow's and Warner's Copyright Claims

Robbins also seeks to dismiss Manilow's and Warner's copyright claims for damages as compensated for by the award of statutory damages to Kamakazi by the arbitrator. Under the 1976 revisions of the copyright laws, copyrights are divisible and freely alienable, and various rights arising under a copyright can be held by and transferred to different owners. 17 U.S.C. §§ 201(d), 106.[1] Such interests can result

---

1. § 201(d) provides in part:

    (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance ...

    (2) Any of the exclusive rights comprised in a copyright ... may be transferred as provided by clause (1) and owner separately. The owner of any particular exclusive right is

from an assignment, an exclusive license or any other conveyance whether or not limited in time or place of effect. 17 U.S.C. § 101. Under this concept of divisibility, "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Such an owner of a particular exclusive right under a copyright "is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner." 17 U.S.C. § 201(d)(2).

█ Thus Manilow and Warner are proper plaintiffs to bring an action for injunction and damages for copyright infringement. Manilow is the beneficial owner of the copyright under Section 501(b) since he transferred legal title to the copyrights in exchange for a percent of the royalties based on sales or license fees.

A "beneficial owner" for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees. H.R.Rep.No.1476, 94 Cong.2d Sess. 159, *reprinted in* [1976] U.S.Code Cong. & Ad. News p. 5659, 5775. Warner, by alleging that it recorded the instrument transferring to it the exclusive right to print, reprint, publish, distribute, vend and sell printed copies of the compositions for a stated term, also satisfied the prerequisites for filing an infringement suit. 17 U.S.C. § 205(d). *See generally Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841, 845–46 (N.D.Ill.1979).

█ The difficulty arises, however, in determining whether Kamakazi, Warner and Manilow all have a claim for damages or whether the latter two licensees must look to Kamakazi which has already received its award as a consequence of the arbitration. Section 504(a) provides:

Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) The copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) Statutory damages, as provided by subsection (c).

A plaintiff shall elect the form of damages prior to final judgment. *See generally* 3 M. Nimmer, Nimmer on Copyright § 14.04[A] at 14-22.

The provision for statutory damages in 17 U.S.C. § 504(c) provides in part:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just . . . .

Section 504(c)(2) then provides that statutory damage awards may be increased to $50,000 per infringement if the infringement was committed willfully. Such a finding was made by the arbitrator.

█ In establishing divisible rights under a copyright, however, Congress also provided for notice and joinder provisions to anyone having a claim or interest in the copyright, 17 U.S.C. § 501(b), thereby indicating the intent to avoid a multiplicity of suits by "insuring to the extent possible that the other owners whose rights may be affected are notified and given a chance to join the action" H.R.Rep.No.1476, 94 Cong.2d Sess. 159, *reprinted in* [1976] U.S.Code Cong. & Ad.News p. 5659, 5775. Congress thereby evinced the intent to have all claims presented before one tribunal "to the extent possible."

This intent is particularly important when the party seeking redress for copy-

entitled to the extent of that right, to all of the protection and remedies accorded to the

copyright owner by this title.

right infringement requests statutory damages pursuant to 17 U.S.C. § 504. The House Report analyzing § 504 stated in part:

2. Although, as explained below, an award of minimum statutory damages may be multiplied if separate works and separately liable infringers are involved in the suit, a single award in the $250 to $10,000 range is to be made "for all infringements involved in the action." A single infringer of a single work is liable for a single amount between $250 and $10,000, no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series.

3. Where the suit involves infringement of more than one separate and independent work, minimum statutory damages for each work must be awarded.... Moreover, *although the minimum and maximum amounts are to be multiplied where multiple "works" are involved in the suit, the same is not true with respect to multiple copyrights, multiple owners,* multiple exclusive rights, or multiple registrations. This point is especially important since, under a scheme of divisible copyright, it is possible to have the rights of a number of owners of separate "copyrights" in a single "work" infringed by one act of a defendant.

(Emphasis added) H.R.Rep.No.94–1476, 94 Cong., 2d Sess. 162, *reprinted in* [1976] U.S. Code Cong. & Ad.News pp. 5659, 5778.

■ Contrary to Robbins' assertions, however, in the view of the court, Warner and Manilow are not barred from asserting their claims in the circumstances of this case.[2] The limitation in paragraph 3 of the House Report prohibits the multiplication of maximum and minimum amounts in determining statutory damages. Thus, although there are three plaintiffs asserting rights in the copyright, the minimum statutory award under 17 U.S.C. § 504(c)(2)(i) remains $250, and the maximum award remains $10,000 for infringements of that work, with adjustments under § 504(c)(2) for willful infringements. The limitation on the maximum and minimum statutory amounts does not by its limits define or limit who may recover under the liability provision.

■ Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for either (1) the *copyright owner's* actual damages... or (2) statutory damages ...." (emphasis added) The statutory damages provision also refers to the copyright holder's action. Section 101 of the Act in defining copyright owner provides:

"Copyright owner," with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

Consequently the liability provision of Section 504(a), by making reference to the owner of a particular right, provides for the liability of an infringer to the owner of that particular right. There is nothing that can be discerned in the statutory scheme to require that recovery by one owner of a particular exclusive right precludes the recovery for infringement by the owner of another exclusive right, as long as the infringer's liability on these statutory damages does not exceed the maximum amount provided in Section 504(c) with the limitation that the minimum amount remains that specified in Section 504(c).

■ Moreover, statutory damages are provided for "all infringements *involved in the action.*" (emphasis added) 17 U.S.C. 504(c). Kamakazi asked the arbitrator to defer consideration of the damage question so that all damages could be decided in Federal District Court. However, Robbins

---

**2.** Robbins has presented a letter agreement dated "As of January 1, 1980" (Exhibit B appended to Robert C. Osterberg's Affidavit in opposition to plaintiffs' motion for partial summary judgment) between Kamakazi and Warner in which costs of the action against Robbins were agreed to be shared equally and that any recovery was to be resolved by mutual agreement or by arbitration. Thus the agreement does not constitute an election of remedies but merely a reflection of the uncertainty of the plaintiffs on the subject.

objected to this suggestion, and the arbitrator refused to defer and decided the damage question.[3] Robbins, by asserting its right of arbitration and refusing plaintiffs' attempts to consolidate the trial of all plaintiffs' damages before one court, has effectively separated the claims into two actions and cannot at this date assert that the claims should have been tried in one action as a bar to Manilow's and Warner's claims. To grant Robbins its requested relief would preclude Manilow and Warner from asserting their actions without the opportunity to try their cases or be heard at all.

■ Furthermore, such a resolution of the issue in the context of this case is a valid disposition under the remedies provided under Section 504. This resolution is consistent with the congressional intent "to provide the courts with reasonable latitude to adjust recovery to the circumstances of the case." H.R.Rep.No.1476, 94 Cong.2d Sess. 161, *reprinted in* [1976] U.S.Code Cong. & Ad.News pp. 5659, 5777.

### *Robbins' Motion to Dismiss Manilow's Privacy Claims*

The fifth cause of action by Manilow against Robbins seeks damages for unauthorized use of Manilow's name portrait and picture for advertising and trade purposes in violation of N.Y.Civ.Rights Law §§ 50, 51 (McKinney Supp.1980) when Robbins, without authorization, published folios containing Manilow compositions. Section 51 provides:

Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.

Robbins, however, claims the protection of the statutory exclusion which provides:

[N]othing contained in this article shall be so construed as to prevent any person, firm or corporation ... from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith.

N.Y.Civ.Rights Law § 51 (McKinney Supp. 1980). Robbins contends that Manilow relinquished any right of privacy by his earlier consent to the use of his name and likeness in the previous folios and further that the use of Manilow's name and likeness is merely a use in excess of contractual

---

**3.** The Arbitrator made the following summary:

Mr. Frankel suggested that perhaps I might wish to use my discretion to defer consideration of damages between the parties in the hearing and permit Judge Sweet in the Federal proceeding to hear and award damages with respect to all parties including Barry Manilow and Warner Bros.

Mr. Frankel indicated that the testimony here would probably be duplicative of the testimony to be given in the Southern District case, and that perhaps in an effort to save time, I might consider not hearing the damage issue.

Mr. Osterberg raised the potential that he might argue in the Federal Court, Southern District case that the award of damages and the arbitration might limit Judge Sweet and

that, therefore, he did not believe that the damage issue should be waived at this hearing.

After considering the arguments, I determined and expressed to Mr. Frankel my opinion that the arbitration between the two parties, which was referred to the American Arbitration Association pursuant to Judge Sweet's opinion, should be a total resolution of the claims and liabilities between the parties; that is, Kamakazi Music and Robbins Music, and that I was not prepared to exercise discretion, if I have any, to not hear the damage issue, and that I would hear testimony as to damages.

Transcript of proceeding before American Arbitration Association at 330–31.

authority and that therefore he has failed to state a cause of action.

It is initially important to note that the privacy right includes protection for the commercial value of a public figure's name and likeness. In *Brinkley v. Casablancas*, 80 A.D.2d 428, 438 N.Y.S.2d 1004, 1012 (1st Dept. 1981) the court stated:

> the so-called right of publicity is subsumed in sections 50 and 51 of the Civil Rights Law to the extent that even a public figure has a privacy interest which finds recognition in the statute and for the violation of which a remedy of monetary redress is provided.

Thus damages in a privacy claim are not limited to mental strain, humiliation, distress associated with the traditional notion of privacy. The statute was also intended to protect the privacy interest of a public figure "whose economic interests are affected by the wrongful exploitation of his or her name or likeness." Injuries to such a "property" interest and the interest in freedom from commercial exploitation, are compensable under Section 51. *Id.*

The Section 51 exclusion requires the sale or disposition of the composition, and the disposition is the determinative factor as discussed in *Yameta Co. v. Capital Records, Inc.*, 279 F.Supp. 582 (S.D.N.Y.), *rev'd* on other grounds, 393 F.2d 91 (2d Cir. 1968), and *Shaw v. Time-Life Records*, 38 N.Y.2d 201, 379 N.Y.S.2d 390, 341 N.E.2d 817 (1975). In *Yameta* Jimi Hendrix had an exclusive recording contract with Yameta Co. ("Yameta") and subsequently granted recording rights to another recording company, PPX Enterprises ("PPX"). PPX was found not liable to Hendrix for using Hendrix's name and likeness in connection with his recordings made for them even though the PPX-Hendrix agreement may have been invalid vis-a-vis Yameta. Hendrix had effectively disposed of his name and likeness directly to PPX and fell within the exclusion of Section 51 denying relief to Hendrix. Hendrix could not claim the precedence of the Yameta contract to deny the PPX contract as a basis for a privacy action. Similarly, in *Shaw v. Time-Life Rec-*

*ords*, 38 N.Y.2d 201, 379 N.Y.S.2d 390, 341 N.E.2d 817, Artie Shaw had made arrangements of songs to which other individuals held the copyrights. Since Shaw could not hold copyrights to the arrangements, he effectively held no property interest in the arrangements which were thereby "placed in the public domain." *Id.* at 205, 379 N.Y.S.2d at 394, 341 N.E.2d 817. Such "public placement" of the arrangements constituted a disposition of the arrangements so that the accurate use of Shaw's name and likeness in connection with the arrangements did not constitute an invasion of Shaw's privacy right. Thus the key determination is whether Robbins had been granted the right to the underlying compositions with accompanying right to use the composer's name or likeness.

Although at the time of the alleged infringing actions Robbins may not have had the right to publish the compositions as the arbitrator subsequently concluded, Manilow had disposed of the underlying compositions through Kamakazi to Robbins and with this disposition Robbins gained the right to use Manilow's name and likeness in that connection pursuant to the statutory exclusion. This treatment of the disposition and use by Robbins is in accord with the holding in *Neyland v. Home Pattern Co.*, 65 F.2d 363, 364 (2d Cir.), *cert. denied*, 290 U.S. 661, 54 S.Ct. 76, 78 L.Ed. 572 (1933), to the effect that the party granted the right to publish the compositions is the one authorized to use the name or likeness in connection with the composition.

Although Manilow must establish the breach of the Agreement, not a difficult task given the arbitrator's decision, breach of a contract is not, of itself, sufficient to state a cause of action under Section 51. *Gautier v. Pro Football*, 304 N.Y. 354, 107 N.E.2d 485 (1952). In *Wrangell v. C. F. Hathaway Co.*, 22 A.D.2d 649, 253 N.Y.S.2d 41 (1st Dept. 1964), the court found a breach of contract with no action for invasion of Wrangell's privacy. George Wrangell, the "Man in the Hathaway Shirt," had authorized the use of his likeness in connection with the sale of shirts. After Wrangell

left Hathaway's employ, the company used his photograph in its sale of women's blouses. Wrangell's claim that his photograph was used in a special way beyond the authorization of the contract was held not to state a cause of action under Section 51 since by his contract for the use of his photograph in the company's trademark he relinquished his right to privacy as to Hathaway. Similarly here, although Robbins' use of the composition and the accompanying name and likeness has been held to violate the Agreement, it was not an invasion of Manilow's right of privacy in the sense of his right to be free from mental strain and distress as well as of his interest in the commercial exploitation of his valuable name and likeness.

*Brinkley v. Casablancas*, 80 A.D.2d 428, 438 N.Y.S.2d 1004, upon which Manilow in part, relies is distinguishable on its facts. There the defendant printed a poster of a fashion model but had never been granted the authority to print the poster, no written release authorizing the distribution of her photograph or likeness by the defendant having been signed. Although the plaintiff had consented to similar photographs of her being published by others, the defendant never had the authority to publish the photograph in question. The authorities set forth require the granting of Robbins' motion to dismiss the Manilow privacy claim.

*Robbins' Motion to Dismiss Plaintiffs' Punitive Damages Claim*

Robbins finally seeks to dismiss the plaintiffs' claims for punitive damages. With regard to the copyright claims when an award of statutory damages is awarded, particularly under 17 U.S.C. § 504(c)(2) providing for an increase of statutory damages to $50,000 for a willful infringement, punitive or exemplary damages are inappropriate. *Frederick Chusid & Co. v. Marshall Leeman & Co.*, 326 F.Supp. 1043, 1064 (S.D. N.Y.1971); *Davis v. E.I. DuPont de Nemours & Co.*, 249 F.Supp. 329, 345 (S.D.N.Y. 1966); 3 M. Nimmer, Nimmer on Copyright, § 14.02 at 14–12. *But cf: L & L White Metal Casting Corp. v. Joseph*, 387 F.Supp. 1349 (E.D.N.Y.1975) (punitive damages de-nied because defendant's conduct not sufficiently outrageous or egregious); *Bell v. Pro Arts, Inc.*, 366 F.Supp. 474 (N.D.Ohio 1973), *aff'd*, 511 F.2d 451 (6th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975) (punitive damages denied as unwarranted). The public policy rationale for punitive damages of punishing and preventing malicious conduct can be properly accounted for in the provisions for increasing a maximum statutory damage award from $10,000 to $50,000 per infringement found to be willful. The motion therefore will be granted.

*Plaintiffs' Motion to Amend the Complaint*

This is the plaintiffs' first request to amend the complaint and two amendments are sought. First, they seek to recover for infringements not only by Robbins' personality folders as set forth in the original complaint but also for infringements in all forms. Second, plaintiffs seek to amend their *ad damnum* clause which seeks monetary damages for the infringements (¶¶ 27 and 50 of the original complaint and ¶¶ 22 and 47 of the proposed amended complaint) to permit recovery of the greater of plaintiffs' actual damages and Robbins' profits, or statutory damages, thus adding the possibility of a recovery for actual damages.

Fed.R.Civ.P. 15(a) provides, except as to amendments allowed as a matter of course, that "a party may amend his complaint only by leave of court . . . ; and leave shall be freely given when justice so requires." The Supreme Court's interpretation of this provision is:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Dev. Fund Co.,* 608 F.2d 28, 42 (2d Cir. 1979).

In the instant action there is no evidence of bad faith or a dilatory motive. This amendment is, however, sought long after the original complaint was filed on May 19, 1980. Under normal circumstances such a delay may properly bar a motion to amend the complaint. However, in the instant action all proceedings were stayed pending arbitration of the claims arising under the Agreement. Three days after the filing of the complaint Kamakazi sought a preliminary injunction and Robbins cross-moved to dismiss for lack of jurisdiction or alternatively for a stay pending arbitration of the dispute under the Agreement. After a number of motions, the hearings and further motions, the arbitrator's awards were confirmed in opinions dated August 3, 1981 and September 15, 1981. This motion to amend the complaint was served on defendants on December 7, 1981. In light of the delay attributable to the stay pending arbitration sought by Robbins, plaintiffs' motion for leave to file an amended complaint is not unduly delayed.

Nor will the amendments result in substantial prejudice to Robbins given the factual issues to be presented. *See generally United States v. International Business Machines Corp.,* 66 F.R.D. 219, 230 (S.D.N.Y. 1974). Robbins' ability to litigate the merits of the action will not be impaired by the amendment seeking recovery for all infringements rather than only for those stemming from personality folios since the infringements remain the gravamen of the action rather than the form in which the infringements are presented to the public by Robbins. *See Bratt v. Bethlehem Steel Co.,* 30 F.R.D. 365, 366 (E.D.Pa.1962). Nor will such a change impair Robbins' ability to present evidence on this matter. *See Vulcan Soc. v. Fire Dep't. of White Plains,* 82 F.R.D. 379, 386 (S.D.N.Y.1979). Further-

more, these alleged infringements have been the subject of discussion in the hearings before the arbitrator and were in part reflected in his award. Indeed such infringements might fall simply within the prayer seeking "such other, further and different relief as to this court may seem just and proper," to the extent that the same copyrights are involved, though published in different form.

With respect to the amendment to the ad damnum clause seeking recovery for actual damages and Robbins' profits or statutory damages, a similar analysis applies. The change will not prejudice Robbins' ability to try the case on the merits, nor its ability to present evidence. The amendment will only conform the prayer for relief to the relief authorized under the Copyright Act, 17 U.S.C. § 504(b). Such relief may well fall within the prayer quoted above and will serve to solidify issues for discovery. As to the amendments relating to the *ad damnum* clause the motion to amend will be granted.

With respect to the fifth cause of action seeking recovery for tortious interference with a contractual relationship, dismissed by this court's opinion dated August 3, 1981 and the court's judgment dated November 20, 1981, Robbins contends that Kamakazi and Warner should not be able to interpose the claim once again. As to this claim the only reason to allow the amendment, including this provision, is to protect Kamakazi's and Warner's rights to appeal the dismissal of the cause of action since a failure to include the claim in the amended complaint may be deemed a waiver of that claim. *Compare Wilson v. First Houston Investment Corp.,* 566 F.2d 1235, 1237–38 (5th Cir. 1978), *vacated* on other grounds, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979) (no waiver) *with Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Teamsters and Helpers Local No. 150,* 440 F.2d 1096, 1098 (9th Cir.), *cert. denied,* 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971) (waiver) and *Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967) (waiver). In the instant action the judgment was signed on November 20, 1981 and entered on November 23, 1981. Since Ka-

makazi failed timely to appeal that judgment, it can no longer assert the claim so this provision of the amended complaint would be a futility. *See Studiengesellshaft Kohle, mbH v. Novamont Corp.*, 485 F.Supp. 471, 474 (S.D.N.Y.1980); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F.Supp. 728, 734 (S.D.N.Y.1966), *aff'd*, 395 F.2d 663 (2d Cir. 1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969). As to this provision the motion to amend the complaint is denied.[4]

### Warner and Manilow's Motion for Partial Summary Judgment

Manilow and Warner base their motion for summary judgment on the decision of the arbitrator, affirmed by this court, which construed the Kamakazi-Robbins Agreement and found that Robbins' rights under the Agreement had terminated and that Robbins' actions thereby infringed on Kamakazi's copyrights. Invoking the doctrine of collateral estoppel, Warner and Manilow claim that infringements against them have been established.

■■■ Since the current action is based on Federal Copyright Law, the federal rules concerning collateral estoppel apply. *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 324 n.12, 91 S.Ct. 1434, 1440 n.12, 28 L.Ed.2d 788 (1971). The basic requirements for collateral estoppel are: (1) the party against whom collateral estoppel is asserted must have been a party, or in privity with a party, to the prior action; (2) the issues to be collaterally estopped must have been finally determined on the merits; (3) the estoppel issues must have been essential, necessary, and material to the prior action; (4) the estopped issues must have been actually litigated, and the party to be estopped must have had the opportunity to fully and fairly litigate the issues; and (5) the issues decided must be identical to the issues sought to be estopped. *See Montana v. United States*, 440 U.S. 147, 153–55, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–37, 99 S.Ct. 645, 649–54, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100–103, 74 S.Ct. 414, 420–22, 98 L.Ed. 532 (1954). Additionally offensive collateral estoppel should only be invoked when the plaintiff could not easily have been joined in the prior action and when invocation of the doctrine will not be unfair to the party. *Parklane Hosiery Co. v. Shore*, 439 U.S. at 331, 99 S.Ct. at 651.

■■■ The doctrines of collateral estoppel are equally applicable under appropriate circumstances to decisions rendered by an arbitrator. *American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 678–79 (2d Cir. 1974); *Ritchie v. Landau*, 475 F.2d 151 (2d Cir. 1973); *Maidman v. O'Brien*, 473 F.Supp. 25, 29–30 (S.D.N.Y.1979).

■■■ Collateral estoppel properly applies as to the arbitrator's determination that Robbins was without authority to print the infringing publications under the Agreement. The arbitration proceeding and decision affirmed by this court meets the several requirements set forth above. Robbins was a party to the prior action. The issue of Robbins' authority under the Agreement was the very substance of the arbitration, and the decision was clearly on the merits. The issue was necessary, material and essential to the decision of the arbitrator. The requirement of a full and fair opportunity to litigate the matter has clearly been satisfied. Robbins was party to the extensive proceedings before the arbitrator with every opportunity and incentive to litigate the case thoroughly and indeed had sought the resolution of the issue in that particular forum, and was well aware of the binding nature of the arbitration proceeding. It is therefore collaterally estopped from urging that its acts were authorized by the Agreement.

---

**4.** With respect to the motions' effects on Vicks and Vicks' pending motion to dismiss, both will be held in abeyance pending submission of a stipulation disposing of the case against this defendant. The court has been informed that this stipulation will be forthcoming.

However, partial summary judgment on the issue of Robbins' liability to Manilow and Warner, is inappropriate. The validity of the transfer of rights to Warner and the recordation of such rights by Manilow and Warner with the Copyright Office was not necessarily established or litigated in the arbitration.

*Warner and Manilow's Motion for Production and Inspection of Documents*

Finally plaintiffs have sought production of several documents and other items of discovery. Due to the lapse of time any timeliness objections are no longer valid. The term "related entities" shall be deemed to refer to the Big 3 Music Corp. If plaintiffs seek records of other related entities they shall be specified. The tape recording shall be examined at the premises of the attorney for Robbins. As to request number two, the documents shall be produced, subject to being withheld by Robbins on the ground of privilege upon a listing of the date and parties to each communication so withheld. Inspection of documents relating to costs and disbursements shall also take place, as agreed between the parties, at Robbins' premises. Requested financial information shall be produced except to the extent these documents and photocopies have already been provided to plaintiffs.

Discovery shall be completed by March 15, 1982 and the final pretrial order shall be submitted by March 22, 1982, at which time the case will be placed on the ready trial calendar.

IT IS SO ORDERED.