**Robert E. PARKS and Robert L. Marietta, Appellants,**

v.

**David H. FINE, Appellee.**

**Appeal No. 85–757.**

United States Court of Appeals, Federal Circuit.

Oct. 9, 1985.

Donald Gunn, Gunn, Lee & Jackson, Houston, Tex., argued for appellants.

Anthony M. Lorusso, Pahl, Lorusso & Loud, Boston, Mass., argued for appellee. With him on brief was George A. Loud.

Before FRIEDMAN, Circuit Judge, COWEN, Senior Circuit Judge, and KASHIWA, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Patent and Trademark Office Board of Patent Interferences (Board), refusing to dissolve an interference between U.S. Patent No. 4,018,562 (Parks patent) and application Serial No. 512,374 filed by Fine and awarding priority to the Fine application over the Parks patent. The decision not to dissolve the interference is reversed and the award of priority to the Fine application is vacated.

I

The subject matter of the ten interference counts in this case involves a method for determining the total nitrogen content of a sample of an organic chemical compound. The parties agree that all the interference counts stand or fall together with respect to the issues involved. According to count 1, the method includes the step of "decomposing [the] sample ... at a temperature sufficiently above 700°C that substantially all of the chemically bound nitrogen is recovered ..., *such decomposition being conducted in the absence of a catalyst....*" (Emphasis added.)

Fine originally filed his patent application on October 7, 1974. Parks filed his application on October 24, 1975. The Parks application resulted in the issuance of U.S. Patent No. 4,018,562 on April 19, 1977.

On July 28, 1978, Fine attempted to provoke an interference with Parks by amending his application to add claims that substantially copied claims in the Parks patent. The copied claims included the recitation that the decomposition process was "being conducted in the absence of a catalyst." The language that Fine copied from the claims of the Parks patent was not included in the claims of Fine's earlier application.

Section 135(b) of Title 35, U.S.C. (1982) provides:

A claim which is the same as, or for the same or substantially the same sub-

ject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted.

Before an interference was declared, the examiner rejected the newly presented claims in the Fine application that Fine had substantially copied from the Parks patent. One of the grounds of the rejection was that because the earlier Fine claims did not expressly include the "absence of a catalyst" limitation, the present Fine claims containing that limitation were barred under section 135(b) as not having been "made prior to one year from the date" on which the Parks patent was granted. (Parks' patent issued on April 19, 1977, and Fine filed his amendment adding the substantially copied claims more than a year later, on July 28, 1978.)

On appeal, the Board of Patent Appeals reversed that rejection. It reasoned that since the specification of the original Fine application stated that the claimed reaction could take place at temperatures below 600°C through the use of appropriate catalysts, "[t]he normal implication of this teaching is that catalysts are unnecessary or are not employed in the range of 600–1700°C. Accordingly, in view of the supporting disclosure, it may be implied that appellant's original claims specifying a range of 600–1700°C did not include a catalyst." *Ex parte Fine*, 217 USPQ 76, 78 (1981).

Having determined that the copied claims would be patentable to Fine, the PTO declared an interference with Parks.

Parks moved to dissolve the interference. He argued that section 135(b) barred the Fine amended application because (1) the newly presented claims in Fine's application were almost verbatim copies of the claims in Parks' issued patent, and (2) the Fine application did not contain those claims until more than one year after the Parks patent was granted. Fine responded that the earlier claims in his application covered "the same or substantially the same subject matter" as the claims in the Parks patent. He argued that the limita-

tion "in the absence of a catalyst" in the claims of the Parks patent was not a material part of Parks' invention, but that if it were material, Fine's earlier claims inherently included the limitation.

The Board of Interferences refused to dissolve the interference and awarded priority to Fine. The Board stated that although it was not bound by the Board of Patent Appeals' decision in *Ex parte Fine, supra*, it "fully agree[d]" with the decision, and "here adopt [it] as our own...." It ruled that if Parks was contending that "Fine's invention now claimed ... includes 'material limitations' ... not previously claimed, the burden was upon Parks so to establish."

## II

**■** A. 1. The record establishes that the "absence of a catalyst" limitation in the Parks patent claims and the contested counts is material. Parks inserted this limitation in his claims in response to, and to avoid, a rejection by the examiner. In amending his claim during *ex parte* prosecution—an amendment that included adding the "absence of a catalyst" limitation—Parks stated: "The original claims have effectively been rewritten to better define over the prior art cited by the Examiner."

The insertion of this limitation to overcome the examiner's rejection is strong, if not conclusive, evidence of materiality. *Cf. Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 222 USPQ 929 (Fed.Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). There, in rejecting the argument that we should ignore a limitation the applicant added to a claim during prosecution to overcome the examiner's rejection because the examiner would have allowed the claim even without the limitations in view of another limitation which the applicant also added, "[w]e decline[d] to undertake the speculative inquiry whether, if [the patentee] had made only [the other] narrowing limitation in his claim, the examiner nevertheless would have allowed it." *Id.* at 389, 222 USPQ at 933.

The record contains additional evidence that the "absence of a catalyst" limitation

is material. For example, during the interference proceedings Fine moved to amend the counts in interference by eliminating certain language from them, including the "absence of a catalyst" limitation. The examiner of interferences referred the motion to the primary examiner. The latter denied the motion "since material limitations would be deleted from the count" and stated that the limitations sought to be eliminated "are deemed material." Further, at oral argument, Fine's attorney admitted that the limitation was significant enough that use of Parks' patented process in combination with a catalyst would avoid infringement of the Parks patent.

■ 2. We also disagree with Fine's alternative argument, which the Board also accepted, that if the "absence of a catalyst" limitation is material, the specification of Fine's application inherently disclosed the limitation sufficiently that his earlier claims implicitly also included the limitation. Since the specification stated that temperatures below 600°C "may be utilized" through "use of appropriate catalysts," the Board of Appeals reasoned that the "normal implication ... is that catalysts are unnecessary or not employed" for temperatures of more than 600°C. *Ex parte Fine*, 217 USPQ at 78.

But the implication in the specification that catalysts would not or need not be used does not imply that they must not be used. It is not sufficient to compel the inclusion of that limitation into claims not expressly so stating. "The inquiry here is not whether such a step is inherently *disclosed*, as it might be in a right-to-make case. Rather, the question is whether the step *necessarily* occurs in the process *as claimed*." *Corbett v. Chisholm*, 568 F.2d 759, 766, 196 USPQ 337, 343 (CCPA 1977) (citing *In re Schutte*, 244 F.2d 323, 113 USPQ 537 (CCPA 1957)) (emphasis in original).

Fine relies on claims 1, 2, 3, 4, 7, 9, 77 and 80 of his application to support his contention that within one year of the date on which Parks' patent issued he claimed the "absence of a catalyst" limitation. None of these claims, however, contains any express language directed to the presence or absence of a catalyst. We do not believe that Fine's assertion that "[t]he high temperatures recited by count 1 render the use of a catalyst unnecessary," would, even if true, be enough in this case to establish that the limitation "in the absence of a catalyst" is inherent in any of those claims. Although the Fine specification stating that catalysts must be used below 600°C may inherently indicate that they normally need not and are not used above that temperature, it does not inherently state that catalysts are never to be used in that situation.

B. Fine argues that under *Case v. CPC International, Inc.*, 730 F.2d 745, 221 USPQ 196 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984), he should prevail because it was Parks' burden to establish the materiality of the "absence of a catalyst" limitation and that Parks failed to do so. *CPC* involved a different situation and does not control this case. To whatever extent *CPC* is relevant, however, it supports Parks' position rather than Fine's.

*CPC* involved an interference between an issued patent and a pending application in which the Patent and Trademark Office had determined that the issued claims were unpatentable to the applicant. The interference was then "declared on the basis of 'phantom' counts devised by the office to circumscribe what the examiner perceived to be the interfering subject matter. The interference counts here are denominated 'phantom' counts because none are the same as claims in either Case's patent or CPC's application. The counts are broader than claims made by either party." *Id.* at 748, 221 USPQ at 198.

The patentee sought to dissolve the interference on the ground that several material limitations in his claims had been omitted from the phantom counts. In rejecting this argument, the court stated:

In effect, a motion to dissolve is an attack on the decision to declare an interference which has been made by the agency and the movant is the proponent of a contrary position.

In such circumstances we believe the rule must be that the movant who seeks to dissolve an interference must bear the burden of persuasion to show that the omitted limitation is material.

*Id.* at 750, 221 USPQ at 200 (citing *Aelony v. Arni,* 547 F.2d 566, 571, 192 USPQ 486, 490 (CCPA 1977)).

The court then held that the patentee had failed to establish that the omitted limitations were material.

In *CPC* the patentee contended that no true interference existed because the phantom counts did not contain all the limitations material to the claimed invention. In that situation, it is appropriate to place upon the party seeking to dissolve the interference the burden of proof to show the materiality of the omitted limitation.

In the present case, on the other hand, the counts contain, not omit, the limitation Fine copied from Parks' patent. Fine contends that although his earlier claims did not contain the limitation, they covered the invention in interference because the limitation was immaterial in defining the invention. In this situation, the reasoning of *CPC* suggests that the burden should be upon Fine to show that the limitation is immaterial and not upon Parks to show it is material. Fine has made no attempt to show immateriality, but instead has relied upon Parks' failure to show materiality. As indicated earlier, the record contains substantial evidence of materiality.

In upholding the district court's determination that the inventor had not shown that the omitted limitations were material, the court in *CPC* was "unpersuaded that a [particular] limitation, if critical, would not be found in the claim." *Id.* 730 F.2d at 750, 221 USPQ at 201. In the present case, in contrast, the limitation in issue is found both in the Parks claims that Fine copied and the counts in interference.

Accordingly, the decision of the Board not to dissolve the interference is reversed. The interference being dissolved, there is no occasion to award priority to either party. The Board's award of priority to Fine therefore is vacated.

REVERSED and VACATED.