**WILDLIFE INTERNATIONALE, INC., et al.**

v.

**B. Russell CLEMENTS, et al.**

No. C-1-83-66.

United States District Court,
S.D. Ohio, W.D.

Aug. 21, 1984.

W. Roger Fry, Cincinnati, Ohio, for plaintiff.

B. Russell Clements, pro se.

ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court, by agreement of the parties, for decision based on the record. That record consists of the documents filed with the Court,[1] deposition transcripts, and exhibits filed as attachments to documents and in anticipation of trial. The parties have agreed to have the Court determine both facts and law based on the record. See Doc. No. 81.[2]

1. The Court has focused primarily on the Complaint, Doc. No. 1; Defendant's Motion for Summary Judgment and related documents, Doc. Nos. 35, 40, 43 and 49; Plaintiffs' Motion for Summary Judgment and related documents, Doc. Nos. 78, 79 and 80; and defendant's Final Brief, Doc. No. 82, in analyzing the legal arguments of the parties. The Court notes that plaintiffs chose not to submit a Final Brief, although they were entitled to do so. (See Doc. No. 81).

2. The vast majority of pertinent facts are undisputed. Where the Court has found it necessary to resolve a factual dispute based upon the evidence in the record, it has so indicated.

*Background Facts* [3]

Plaintiff John A. Ruthven ("Ruthven") is a well-known wildlife artist. Plaintiff Wildlife Internationale, Inc., ("Wildlife") produces and sells lithographic reproductions of original artwork painted by Ruthven. Ruthven is the owner and president of Wildlife.

Defendant B. Russell Clements [4] ("Clements" or "defendant") is the former president, chief operating officer and owner of DeSales Ltd., Inc., ("DeSales"). DeSales was adjudicated bankrupt in 1971 and no longer exists.

In 1967, Ruthven and DeSales entered into the first of three contracts (Pltf.Ex. 8) pursuant to which DeSales was given certain rights to reproduce and sell prints of Ruthven paintings. Similar contracts were entered into in January, 1968, for a period of one year (Pltf.Ex. 9) and September, 1968, for a period of five years. (Pltf.Ex. 10). The specific rights of the parties under those contracts will be set forth, where pertinent, below.

In 1969, Ruthven notified DeSales of his desire to terminate their contractual relationship. This led to a series of lawsuits in state court involving Ruthven, DeSales, Clements and others. Those disputes were resolved by means of a November 5, 1970, Restraining Order (Pltf.Ex. 26) and November 6, 1970, Judgment Entry. (Pltf.Ex. 11). Pertinent provisions of those documents will be discussed below.

In December, 1971, Wildlife acquired the physical, Ruthven-related assets of the bankrupt DeSales from the Central Trust Company (*see* Pltf.Ex. 28) which had acquired those assets through two security agreements with DeSales. (Pltf.Ex. 6 and 7).[5] With certain unimportant exceptions, the remaining assets covered by the Central Trust security agreements were purchased by James E. Saling in March, 1972. (Pltf.Ex. 51). In April, 1973, Ruthven purchased from the trustee in bankruptcy the reproduction rights previously granted to DeSales in the November 6, 1970, Judgment Entry. (*See* Pltf.Ex. 41).

In 1972, Clements became associated with Old Square Gallery ("Old Square"). Although Old Square was technically a partnership owned by Clements' wife and daughter, the Old Square business card lists "Russ, Claire & Beth Clements" as "Family Proprietors." (*See* Pltf.Ex. 5A).

In the summer of 1982, Clements informed Ruthven and his counsel that he was planning to offer certain Ruthven prints for sale to the public, unless a "potentially profitable business deal between us" could be reached. (*See* Pltf.Ex. 15). In October, 1982, Clements began mailing to potential purchasers promotional materials regarding those Ruthven prints. (*See* Pltf.Ex. 29). The materials indicated that the Ruthven artwork was being offered by Clements through Old Square (*see* Pltf.Ex. 5C) and included a price list/order form bearing the Old Square name and logo (Pltf.Ex. 5B), an Old Square business card (Pltf.Ex. 5A) and random brochures depicting Ruthven prints. (Pltf.Ex. 5D and 5E); (*see generally* Pltf.Ex. 29). The Court finds from the evidence (*see e.g.,* Pltf.Ex. 30) and from the arguments of the parties (*see e.g.,* Doc. No. 78 at 7–8; Doc. No. 82 at 10–22) that the prints offered for sale by Clements in October, 1982, and thereafter may be generally categorized as follows:

(1) Limited and unlimited edition prints, including prints known as "Towhee," "Indigo Buntings" and "Tufted Titmice;" [6]

(2) Proofs and make ready sheets.[7]

---

3. This statement of facts will be supplemented, where necessary, in the discussion below.

4. Defendant Clements appears *pro se* in this litigation.

5. Included in the assets acquired and later sold by Central Trust were assets of bankrupt DeSales affiliate corporations, P.C. Printing Company, Inc., Curtis Products, Inc. and Printers, Inc.

6. Plaintiffs concede that some of the prints in this group were acquired by Clements in the "secondary market," i.e., by lawful purchase from third parties. Plaintiffs do not contest Clements' right to resell prints so acquired.

7. Make-ready sheets are pieces of paper used in the initial stages of lithographic printing. The sheets are run through the printing press until the ink has smoothed out enough for the actual printing run to begin. Make-ready sheets are

(3) Prints referred to by the parties as "Dee Bee prints" and "Giant Photo prints."[8]

As mentioned above, Clements also distributed various advertising brochures depicting Ruthven works as part of his promotional activities.

Plaintiffs allege causes of action for copyright and trademark infringement, unfair competition under federal and state law, and conversion, based upon defendant's distribution, sale and/or possession of the foregoing materials. Defendant denies any wrongdoing.

## Discussion

A. In Count One of their Complaint, plaintiffs allege that Clements has infringed Ruthven's copyright in 22 works of art[9] by "distributing copies of the copyrighted works ... to the public by sale or other transfer of ownership." (Doc. No. 1 at 3).

Defendant raises several arguments in response to Count One.[10] Initially, he asserts that the Court lacks jurisdiction over the copyright claim because plaintiffs have failed to follow the procedural prerequisites to maintaining an infringement action. His argument is based on 17 U.S.C. § 205(d), which provides:

> No person claiming by virtue of a transfer to be the owner of copyright or of any exclusive right under a copyright is entitled to institute an infringement action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before recordation.

often reused, resulting in a multiplicity of colors and images. (*See* Pltf. Ex. 34 and 34A). They are usually considered trash and discarded.

**8.** The Dee Bee and Giant Photo prints are Ruthven subjects sold to and reacquired from Dee Bee Associates, Ltd., and Giant Photos, Inc., respectively, by Clements. The quality of these prints is relatively low. (*See* Pltf. Ex. 19 through 25, 62 and 63).

**9.** The works of art and their copyright registration numbers are listed in Paragraph 6 of the

Defendant argues that both Ruthven and Wildlife acquired the copyright interests at issue by transfer and that the instruments of transfer have not been recorded. Therefore, regardless of whether Ruthven or Wildlife is bringing the infringement claim, the failure to observe § 205(d) deprives the Court of jurisdiction. *See Burns v. Rockwood Distributing Co.,* 481 F.Supp. 841, 846–47 (N.D.Ill.1979).

The Court disagrees. First, it is clear that Ruthven alone is bringing the infringement action. (*See* Complaint, Doc. No. 1 at 2, ¶ 6). Defendant argues that Ruthven is the current holder of reproduction and distribution rights in the copyrighted works solely by virtue of his reacquisition of those rights, which he had previously granted to DeSales, from the trustee in bankruptcy. (*See* Pltf.Ex. 41). While it may be true that Ruthven became the *legal* owner of those rights by virtue of that transfer, defendant's argument still fails.

The Copyright Act provides that "[t]he legal *or beneficial* owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added).

A "beneficial owner" for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees. H.R.Rep. No. 1476, 94 Cong.2d Sess. 159, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5659, 5775. *See also Kamakazi Corp. v. Robbins Music Corp.,* 534 F.Supp. 69, 74 (S.D.N.Y.1982).

Complaint. The 22 works do not include the work "Bald Eagle," registration number GP 53815, listed therein. Plaintiffs have withdrawn their claim of copyright infringement with respect to that work. (*See* Doc. No. 78 at 5).

**10.** The Court has examined the parties' arguments with respect to each Count of the Complaint. Not all merit discussion. Any argument not specifically discussed by the Court has been rejected as either meritless or unnecessary to the Court's decision.

**1546**

The example in the legislative history describes exactly the contractual relationship between Ruthven and DeSales: DeSales received certain reproduction and distribution rights in exchange for Ruthven's right to royalties. (*See* Pltf.Ex. 8 at ¶¶ 2, 6; Pltf.Ex. 9 at ¶¶ C(1), C(2); Pltf.Ex. 10 at ¶ B). Accordingly, the Court holds that Ruthven retained his beneficial ownership of all copyright rights throughout the period of the contracts with DeSales. *Kamakazi, supra.* He therefore is not claiming copyright ownership by virtue of transfer and no recordation of an instrument of transfer is required.

Similarly, Ruthven retained his status as beneficial owner of all copyright rights even after his assignment of certain reproduction rights to Wildlife. (*See* Def.Ex. 294). Given Ruthven's position as owner and president of Wildlife and given that any reproduction by Wildlife was to be done under Ruthven's "direct supervision and control," the Court holds that Ruthven retained beneficial ownership of those reproduction rights. *Cf. National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 543 (W.D.Tex.1980).

Accordingly, defendant's jurisdictional challenge must be rejected.

Defendant also argues that his offering prints for sale does not constitute infringement because he lawfully acquired the prints in the secondary market. However, plaintiffs do not contest defendant's right to sell prints so acquired. Rather, plaintiffs' infringement claim focuses on three categories of reproductions:

(1) All reproductions of works known as "Tufted Titmice," "Indigo Buntings" and "Towhee";

(2) Proofs and overruns of certain Ruthven subjects retained by Clements, as president of DeSales, for his personal collection;

(3) Make-ready sheets.

*See* Doc. No. 78 at 7–8.

The Court holds that defendant has infringed Ruthven's copyright with respect to the first two categories of reproductions, but not with respect to the third.

■ With respect to reproductions of the works known as "Tufted Titmice," "Indigo Buntings," and "Towhee," the Court holds that Ruthven owns the copyright to the original works, (*see* Pltf.Ex. 47U–W) (copyright registrations), and that defendant does not possess any rights of reproduction or distribution with respect thereto. In fact, defendant has been permanently restrained by the Court of Common Pleas, Hamilton County, Ohio from "producing, reproducing, exhibiting, distributing and offering for sale or selling" reproductions of those works. (Pltf.Ex. 26).[11] Accordingly, the reproduction and distribution, through sale or offer of sale to the public or otherwise, of copies of those works by defendant constitutes an infringement of Ruthven's copyright.

The Court also holds that defendant has infringed Ruthven's copyright by selling or offering to sell proofs and overruns of the 22 copyrighted works listed in the Complaint which were acquired by Clements in his position as president of DeSales.

■ Defendant argues that he acquired those proofs and overruns "in accordance with a long-standing DeSales company policy," (*see* Doc. No. 83 at 11), by which he retained approximately 50 prints each of certain subjects for his own use. This "policy" was never embodied in the contracts between Ruthven and DeSales (*see* Pltf.Ex. 8–10) nor were distribution rights of the nature now claimed by defendant ever granted with respect to those prints. Regardless of whether the prints themselves were lawfully acquired, it is beyond dispute that Ruthven never granted to Clements any such distribution rights.[12]

11. Defendant erroneously suggests that the state court Order is irrelevant to this copyright infringement action. Courts must often look beyond the Copyright Act in order to determine the rights of the parties in an infringement action. *See, e.g., Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 153 (2nd Cir.), *cert.*

*denied,* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968).

12. It is axiomatic that ownership of a copyright or rights thereunder is distinct from ownership of the material object in which the copyrighted work is embodied. 17 U.S.C. § 202. It is likewise settled that any transfer of a copyright or

Accordingly, the distribution, through sale or offer of sale to the public or otherwise, of copies of any of the 22 listed works of art acquired by defendant pursuant to the aforementioned "policy" constitutes an infringement of Ruthven's copyrights in those works.

■ The Court agrees with defendant, however, that plaintiff's Complaint is defective insofar as it attempts to state a cause of action for copyright infringement with respect to make-ready sheets. The Court notes first that copyright proceedings are not governed by the Federal Rules of Civil Procedure, except insofar as those Rules may be made applicable thereto by specially promulgated copyright rules. Fed.R.Civ.P. 81(a). Rule 8, requiring a "short and plain statement of the claim," has been made applicable to copyright proceedings. *See Gee v. CBS, Inc.*, 471 F.Supp. 600, 643 (E.D.Pa.) *aff'd* 612 F.2d 572 (1979); 2A Moore's Federal Practice ¶ 8.17[7] (2d Ed.1983).

■ In applying Rule 8 to copyright infringement actions, courts have required that particular infringing acts be alleged with some specificity. *Gee, supra,* at 644; 3 M. Nimmer, Copyright § 12.09[a] (1984). This Court need not now attempt to develop general guidelines in this area. The Court holds, however, that given the distinctive characteristics of make-ready sheets, *see* fn. 7, *supra,* distinguishing them from one-image prints, and given the requirement of at least some specificity in alleging infringing acts, the failure to make any specific mention of make-ready sheets in Count One of the Complaint precludes plaintiffs from asserting a cause of action for copyright infringement with respect to those make-ready sheets.

B. Count Two of the Complaint alleges that defendant has infringed Ruthven's copyright in the 22 works listed in Count One by "reproducing and distributing to the public brochures" containing reproductions of those works. In their Motion for Summary Judgment (Doc. No. 78) plaintiffs

confine their cause of action under this Count to brochures containing reproductions of the works "Tufted Titmice," "Indigo Buntings" and "Towhee." (*See* Doc. No. 78 at 14–16). The Court will similarly confine its analysis.

■ The Court has already held that the reproduction and distribution of copies of "Tufted Titmice," "Indigo Buntings" and "Towhee" constituted infringement of Ruthven's copyright. The same analysis applies when the reproduction and distribution are by means of an advertising brochure. Although defendant was previously granted limited reproduction and distribution rights with respect to certain advertising brochures (*see* Pltf.Ex. 11 at 8), the reproduction and distribution of these particular works had already been permanently enjoined. (*See* Pltf.Ex. 26). As plaintiffs point out, defendant recognized as much in his deposition. (Deposition of B. Russell Clements, June 22, 1983, at 39). Under these circumstances, the Court holds that defendant had no right to reproduce or distribute advertising brochures containing reproductions of "Tufted Titmice," "Indigo Buntings" and "Towhee." The Court further holds that the distribution of such brochures infringes Ruthven's copyrights in those works.

C. Counts Three, Four and Five of the Complaint state causes of action for trademark infringement and unfair competition under § 43(a) the Lanham Act, 15 U.S.C. § 1125(a), Ohio Revised Code § 4165.01 *et seq.,* and Ohio common law. The parties agree that the Court should apply the same analysis in connection with each of the three counts. *See Jewel Companies, Inc. v. Westhall Co.,* 413 F.Supp. 994, 999 (N.D. Ohio 1976). Accordingly, the Court will treat the three claims as one. *Id.* In addition, the Court finds it necessary to deal only with issues involving advertising brochures and Giant Photo and Dee Bee prints under these Counts, in light of its rulings

---

rights thereunder, other than by operation of law, must be in writing and signed by the trans-

feror. 17 U.S.C. § 204.

**1548**

with respect to other items under other Counts.

■■■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part,

> Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation ... and shall cause such goods to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The proscriptions of § 43(a) extend to false or misleading advertising. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 646 (6th Cir.1982). Although this case does not present the typical misleading-advertising scenario, the Court concludes that plaintiffs have stated a cause of action entitling them to relief, given the wide reach of the statutory language and the fact that the Act should be broadly interpreted and applied in order to effectuate its remedial purpose. *Frisch's Restaurants, supra,* at 651.

■■■ In the cover letter accompanying the October, 1982, mailing (*see* Pltf.Ex. 5C), defendant stated that the Ruthven prints being offered for sale represented "the very highest quality printing of any fine art prints on the market today." *Id.* With respect to the Giant Photo and Dee Bee prints, that statement is clearly false.[13] Those prints are low quality and do not approach "the very highest quality printing of any fine art prints." Accordingly, the Court holds that defendant's representations to the contrary constitute a violation of § 43(a).

■■■ Defendant's offering for sale the Giant Photo and Dee Bee prints also violates § 43(a) in another respect. That section applies not only to literal falsehoods, it also embraces "innuendo, indirect intimation and ambiguous suggestions." *Vidal Sassoon, Inc. v. Bristol-Myers Co.,* 661 F.2d 272, 277 (2nd Cir.1981). The Court finds that the October, 1982, mailing and defendant's offering for sale the Giant Photo and Dee Bee prints suggest by "indirect intimation" that those prints reflect the artistic standards now associated with Ruthven and that Ruthven approves of their quality. *See* Ohio Rev.Code § 4165.-02(B).[14] Such a false impression, coupled with a likelihood of confusion on the part of the public, is sufficient to warrant injunctive relief under § 43(a). *Frisch's Restaurants, supra,* 670 F.2d at 647.[15] The Court finds that such a likelihood of confusion exists, since the Giant Photo and Dee Bee prints bear reproductions of Ruthven's signature without any suggestion that the prints do not reflect his current artistic standards or meet with his approval. Accordingly, the Court holds that the sale and offering for sale of the Giant Photo and Dee Bee prints constitutes a violation of § 43(a).

Similarly, the Court holds that the distribution of "random old brochure[s]" (*see* Pltf.Ex. 5C) depicting Ruthven prints and bearing his likeness and signature, creates a false impression, likely to cause confusion, that the prints shown are representative in style and quality of those being offered for sale by defendant and that the offering has Ruthven's approval, tacit or otherwise. The creation of that false impression, which the Court finds is likely to

---

**13.** "If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product." *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1356 (S.D.N.Y.1976), *quoted with approval in American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 (2nd Cir.1978).

**14.** The Court considers it irrelevant whether or not Ruthven did, more than a decade ago, approve of those prints. The significant fact is

that, in light of his current artistic style and reputation, he now considers them a threat to his professional standing. *Cf. Benson v. Paul Winley Record Sales Corp.,* 452 F.Supp. 516 (S.D.N.Y.1978); *CBS, Inc. v. Gusto Records, Inc.,* 403 F.Supp. 447 (M.D.Tenn.1974).

**15.** In order to secure an award of damages, plaintiffs would have to show actual deception. *Frisch's Restaurants, supra,* 670 F.2d at 647. This they have not done.

cause confusion among the public, is a violation of § 43(a).

D. Count Six of the Complaint alleges a cause of action for conversion. In light of its previous rulings, the Court will address Count Six only insofar as it pertains to make-ready sheets.

Plaintiffs claim that the make-ready sheets were included in the DeSales assets purchased from the Central Trust Company (*see* Pltf.Ex. 28) and that they rightfully belong to Wildlife. Defendant argues that the make-ready sheets were not covered by the security agreement between DeSales and Central Trust since they were considered valueless and therefore not part of the assets of DeSales. Defendant also asserts that he acquired lawful title to the make-ready sheets when he retrieved them from the trash, where he claims they had been abandoned by DeSales.[16]

The wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights constitutes conversion. *Zacchini v. Scripps-Howard Broadcasting Co.,* 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976); *Railroad Co. v. O'Donnell,* 49 Ohio St. 489, 497, 32 N.E. 476 (1892). Whether or not there has been a conversion of the make-ready sheets turns on whether or not Wildlife is the owner thereof. That, in turn, depends on whether those sheets were covered in the security agreements between DeSales and Central Trust and whether they were part of the DeSales assets purchased from Central Trust by Wildlife.

The security agreements between DeSales and Central Trust each contain descriptions of the collateral assigned by DeSales. (*See* Pltf.Ex. 6 and 7). In Pltf.Ex. 6, the collateral is described in pertinent part as:

Debtor's inventory, which term means goods, merchandise and other personal property now owned or hereafter acquired ... and/or raw materials, work in process and materials used or consumed or to be used and consumed in Debtor's business, including but not limited to the original works of art pained [sic] by John A. Ruthven listed in paragraph 13 of this security agreement, all other original works of art painted by John A. Ruthven now owned or hereafter acquired by Debtor and all lithograph prints and other reproductions of original works of art painted by John A. Ruthven.

The pertinent language in Pltf.Ex. 7, although different in its particulars, is equally broad. (*See* Pltf.Ex. 7).

The Court finds that the description of collateral in Pltf.Ex. 6 encompasses make-ready sheets, which are clearly "materials used ... in Debtor's business" and are arguably "other reproductions" of Ruthven works. In this regard, the Court finds disingenuous defendant's argument that the make-ready sheets were valueless trash and therefore not included in the collateral. Clearly, defendant does not now consider those sheets valueless trash. Furthermore, as defendant candidly admits, Ruthven himself at one time considered similar make-ready sheets to have value, as evidenced by the fact that he offered them for sale at an exhibition of his work at Abercrombie & Fitch in New York in April, 1968, one month after the security agreements were signed. (*See* Ex. D to Doc. No. 79) (promotional brochure for Abercrombie & Fitch exhibition, offering "Printer's Make-Ready Proofs (Framed)" for sale at $50.00).

Accordingly, the Court finds that make-ready sheets were included in the collateral described in the security agreements between DeSales and Central Trust.

The Court further finds that Wildlife acquired those make-ready sheets from Central Trust by means of the December 14, 1971, bill of sale. (*See* Pltf.Ex. 28). Although make-ready sheets are not specifi-

---

16. Defendant also raises a statute of limitations defense based on the applicable four-year limitations period. *See* Ohio Rev.Code § 2305.09. The Court agrees with plaintiffs that their suit was timely pursuant to § 2305.09(D), since they did not discover the conversion until late 1982. *See* Doc. No. 43 at 15.

cally mentioned therein, the broad language of that document, particularly paragraphs 1 and 4, indicates an intent to convey all assets of any value related to Ruthven's art.

 The Court concludes that Wildlife gained title to the make-ready sheets even though many were in Clements' possession. In this regard, the legal distinction between Clements and DeSales must be disregarded in order to prevent inequity to Wildlife. *See Bucyrus-Erie Co. v. General Products*, 643 F.2d 413, 419 (6th Cir.1981).

In light of the foregoing, the Court holds that Clements is liable to Wildlife for conversion of all make-ready sheets bearing any image of Ruthven's artwork.

### Conclusion

In accordance with the foregoing, the Court hereby **ORDERS** as follows:

With respect to Counts One and Two—

Pursuant to 17 U.S.C. § 502, defendant is hereby permanently enjoined from reproducing and/or distributing, by sale or offer of sale to the public or otherwise, copies of the works "Tufted Titmice," "Indigo Buntings" and "Towhee." The foregoing injunction extends to the reproduction and/or distribution of brochures containing reproductions of those works.

Defendant is further permanently enjoined from reproducing and/or distributing, by sale or offer of sale to the public or otherwise, proofs, overruns or other copies of the 22 copyrighted works listed in paragraph 6 of the Complaint acquired by defendant in his capacity as president of De-Sales pursuant to an alleged policy of that company. *See* pp. 9–10, *supra*.[17] This injunction does not extend to prints acquired by defendant in the secondary market. *See* fn. 6, *supra*.

With respect to Counts Three, Four and Five—

Defendant is hereby permanently enjoined from distributing by sale or offer of sale to the public or otherwise, brochures

depicting reproductions of Ruthven artwork or bearing Ruthven's likeness or signature. Defendant is also permanently enjoined from distributing, by sale or offer of sale to the public or otherwise, prints known as Giant Photo and Dee Bee prints. *See* fn. 8, *supra*.

The Court further orders that defendant must, at plaintiffs' request, make available for sale to plaintiffs all Giant Photo and Dee Bee prints in his possession. Plaintiffs may purchase the Dee Bee prints for 10 cents ($.10) apiece (*see* Def.Ex. 224) and they may purchase the Giant Photo prints for the prices listed in Pltf.Ex. 14.

With respect to Count Six—

Defendant is hereby ordered to deliver to plaintiffs all make-ready sheets in his possession or control bearing any image or images of Ruthven artwork.

**IT IS SO ORDERED.**

---

17. The Court will not, at this time, order the destruction or other disposition of the infringing works. *See* 17 U.S.C. § 503(b). The Court would, however, consider such a remedy should it appear, at any time in the future, that defendant has violated this Order.