**Robert Thomas PAYNE, Plaintiff,**

v.

**DINER'S CLUB INTERNATIONAL, Defendant.**

Civ. No. C–3–86–91.

United States District Court,
S.D. Ohio, W.D.

Sept. 27, 1988.

Robert Payne, Moline, Ill., for plaintiff.

Roger Makley, Dayton, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court upon defendant Diner's Club International's motion for Summary Judgment, as to all counts in plaintiff's complaint (doc. no. 27). Pro se plaintiff Robert Thomas Payne opposes this motion and has filed memorandum contra (doc. no. 67) as well as supplemental memorandum contra (doc. no. 68).

In order to fully understand the posture of this case, a brief review of the procedural history is necessary.

Plaintiff's complaint was filed March 4, 1986 which asserts five claims against defendant Diner's Club International (properly known as Citicorp Diners Club, Inc.) Count I alleges violation of the Truth in Lending Act as a result of Diner's Club's cancellation of the plaintiff's account. Count II alleges Diner's Club converted plaintiff's money. Counts III and IV allege defamation (libel and slander) caused by Diner's Club's notification of cancellation of the plaintiff's account. Count V alleges that the rejection by Diner's Club of the plaintiff's subsequent application for credit failed to give specific reasons why his application was denied, in violation of the Equal Credit Opportunity Act, incorrectly cited in the complaint as the Truth in Lending Act.

On June 3, 1986, a trial date of·April 13, 1987 was set. On April 2, 1987 defendant filed a motion for leave to file summary judgment, which was granted on April 8, 1987. As a result, the trial date was reset for November 23, 1987. This matter was then transferred to this Court from docket of the Honorable Walter H. Rice.

In order to prepare this case for trial posture, this Court ruled on all pending motions on October 19, 1987. When the Court became aware that defendant's motion for summary judgment had not been opposed, it vacated the November 23, 1987 trial date and set a new trial date for April 4, 1988. On two occasions, February 8, 1988, and March 15, 1988 this Court was then required to issue orders to plaintiff as to why defendant's motion for summary judgment should not be granted. On May 11, 1988, almost 13 months after defendant filed its motion for summary judgment, plaintiff filed a memorandum contra.

As the basis of defendant's motion, defendant submits that cancellation of the plaintiff's account by Diner's Club was expressly authorized in the membership rules agreed to by the plaintiff. The claims for defamation allegedly arising out of that cancellation are precluded by the truth of the statements published and protected by a conditional privilege. The plaintiff's claim for conversion is unavailing because of the lack of a positive tortious act by Diner's Club and the prompt return of the plaintiff's money. Finally, the plaintiff's assertions that Diner's Club failed to provide specific reasons as to why the subsequent credit application was denied is simply incorrect. Pro se plaintiff Payne has opposed each of these arguments in his voluminous filing.

The summary judgment procedure under Federal Rule of Civil Procedure 56 is de-

signed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) *quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson, supra* at 255, 106 S.Ct. at 2513–14 *citing, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson, supra* at 249, 106 S.Ct. at 2510–11. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson* at 249, 106 S.Ct. at 2510–11, *citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592–93. If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service, supra* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson, supra* 477 U.S. at 249, 106 S.Ct. at 2510–11. This Court further recognizes that a pro se complaint "however inartfully pleaded" must be held to a "less stringent standard than formal pleading drafted by lawyers." Such a pro se document is to be liberally construed.[1] *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ In regard to Count I, plaintiff's contention is that Diner's Club's cancellation of his delinquent account constituted a tort. In *Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 177 (5th Cir.1975), the Gulf Oil Company directed a hotel employee to repossess a customer's Gulf credit card. In finding that Gulf was not liable for the hotel employee's action in taking the credit card, the court emphasized Gulf's right to revoke the card:

> ... by virtue of a statement contained on the card, and in the credit card application signed by plaintiff, Gulf Oil Co. retained the contractual right to revoke the credit card without notice. Hence, Gulf's decision to terminate plaintiff's credit was not tortious.... 508 F.2d at 177

Similarly in *Syna v. Diner's Club, Inc.*, 49 F.R.D. 119, 121 (S.D.Fla.1970), the court held that there is no doubt that an organization such as the Diner's Club has the right to expel from membership those individuals who for some reason or another fail or refuse to pay their account.

The evidence before the court indicates that plaintiff's account was terminated on or about January 24, 1985 for failure to pay the balance due in accordance with the terms of the membership rules. Diner's Club notified the plaintiff of the cancellation. Between January, 1985 and February, 1985, plaintiff incurred further charges on the initial account. New charges and later charges brought the total amount due in February, 1985 to $602.96. It was not until March of 1985, the plaintiff paid the initial account in full. From January 24, 1985 through March 31, 1985 Diner's Club's authorization records indicate no approvals or declines of telephone authorization requests. It is clear from the

---

1. This Court notes that Plaintiff was a practicing attorney at the time of filing his complaint, but has since left the practice of law.

record Plaintiff's account was cancelled due to his noncompliance with the terms of the membership rules.

■2] Count I also includes an alleged violation of the Federal Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1666(a). This provision of the TILA relates to consumer disputes over billing errors. Section 1666(a) imposes certain duties upon creditors, but only if the creditor receives a "written notice" of a billing error. The record does not indicate that the plaintiff gave Diner's Club such "written notice" regarding the December 1984 statement.

In accordance with the foregoing, this Court finds that Diner's Club decision to terminate plaintiff's credit was not tortious.

In Count II of the complaint, the plaintiff alleges Diner's Club converted the plaintiff's funds by negotiating a check for $503.62 in October, 1985. The plaintiff mailed the check to and made the same payable to Diner's Club. The premise for plaintiff's assertion is that the negotiation of the check occurred approximately eight months after the plaintiff's charge account had been cancelled by Diner's Club.

■ Conversion is the wrongful exercise of dominion over property in exclusion of the owner or withholding it from his possession under a claim inconsistent with the owner's rights. *Zacchini v. Scripps Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976); *Wildlife Internationale, Inc. v. Clements*, 591 F.Supp. 1542, 1549 (S.D.Ohio W.D.1984). Implicit in this definition is the requirement that there must be a positive tortious act by the Defendant. 18 O.Jur.3d, Conversion and Replevin § 13.

■ The record indicates that the plaintiff's check was received in the ordinary course of business. Diner's Club credited the payment on or about October 4, 1985 to the plaintiff's account, which was still on the Diner's Club computer. Diner's Club then issued October and November statement showing a $503.62 balance due the plaintiff. Also enclosed in those statements were instructions on how to obtain a

return of the credit balance. On November 8, 1985, plaintiff was issued an adjustment (check) of $503.62 and the plaintiff's money was returned in full, 36 days after receipt.

In view of the foregoing, this Court finds that defendant's actions do not constitute those of conversion.

■5] Counts III and IV of the plaintiff's complaint allege that the plaintiff was defamed by Diner's Club. Count III alleges libel, based upon Diner's Club's publication of the plaintiff's account number in Diner's Club's warning bulletin. Count IV alleges slander, based upon telephone communications with a restaurant representative, indicating that the plaintiff's credit card had been cancelled. The plaintiff's account was cancelled on January 24, 1985, pursuant to the membership rules. The plaintiff's account number was published in the next regularly scheduled warning bulletin, that being bulletin number 62, effective February 15, 1985. The warning bulletin serves to protect Diner's Club and establishments honoring the Diner's Club card from accepting invalid cards. This warning bulletin states that the cards listed in the bulletin are:

> Cancelled for various reasons, including loss or theft, and should not be honored. No inference as to any person's reputation or credit rating is to be drawn from the listing of an individual's card number in this bulletin.

Defendant asserts that truth is always a defense in any action for libel or slander. *Shifflet v. Thomson Newspapers, Inc.*, 69 Ohio St.2d 179, 431 N.E.2d 1014 (1982). Furthermore the Ohio legislature has even codified the defense as follows:

> In an action for libel or slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense. Ohio Revised Code § 2739.02

The publication of the plaintiff's account number in the warning bulletin of February 15, 1985 was completely accurate. Furthermore, publication of this number has the primary purpose to protect from

misuse of the account. In view of the foregoing, this Court finds that defendant's actions do not rise to a level actionable for libel and slander.

In Count V of the complaint, the plaintiff claims that Diner's Club refus[ed] to supply plaintiff with specific reasons why his credit application was denied in violation of the Equal Credit Opportunity Act ("ECOA") 15 U.S.C. § 1691.

 The ECOA requires creditors to furnish credit applicants with a statement of reasons when adverse action is taken by the creditor. 15 U.S.C. § 1691(d)(2). The Federal Reserve Board ("Board") has implemented the ECOA by promulgating Regulation B, 12 C.F.R. Part 202. The Board has provided creditors with further guidance by issuing both an Official Staff Commentary to Regulation B, and sample forms which appear in Appendix C to Regulation B. Creditors are entitled to rely upon forms which appear in Appendix C, and upon guidance in the official Staff Commentary. 15 U.S.C. § 1691e(e).

Diner's Club denied the plaintiff's application for a new Diner's Club card because of a failure to achieve the minimum score required under Diner's Club's credit scoring system. The credit scoring system assigns numerical values to various characteristics indicating degrees of creditworthiness. Applicants whose total scores equal or exceed a certain cut-off level are granted credit; those scores below the cut-off level are denied credit.

The December 11, letter listed the characteristics which were most significant in plaintiff's denial. Those characteristics were:

1. Delinquent account(s) in credit bureau report
2. Too many requests for credit in the last 12 months in credit bureau report
3. Credit report shows too many accounts with the type of creditor we consider an unacceptable credit reference
4. Too many accounts opened in the last 12 months in credit bureau report

This list informed the plaintiff of the principal reasons for the rejection of his application. In view of the foregoing, this Court finds that defendant's letter complied with the requirement of Regulation B that the statement of reasons "be specific and indicate the principal reason(s) for the adverse action." 12 C.F.R. § 202.9(b)(2). Moreover, the statement was substantially similar to the sample forms in Appendix C of the regulation.

In accordance with the reasons contained herein this Court finds that defendant Citicorp Diner's Club Inc. motion for summary judgment as to all Five Counts of plaintiff's complaint is hereby GRANTED.

IT IS SO ORDERED.